IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JOHN DAVID DUTY,                        )
                                        )
                    Petitioner,         )
                                        )
vs.                                     )          Case No. CIV-05-23-FHS-SPS
                                        )
MARTY SIRMONS, Warden, Oklahoma         )
State Penitentiary,                     )
                    Respondent.         )


## ORDER

On October 28, 2002, Petitioner, after being found competent to do so, pled guilty in

the District Court of Pittsburg County, State of Oklahoma, to First Degree Murder and the

Bill of Particulars which alleged four aggravating factors, to-wit: (1) Petitioner had prior

violent felony convictions; (2) the murder was especially heinous, atrocious, or cruel; (3)

Petitioner poses a continuing threat to society; and (4) the murder was committed while

Petitioner was serving a sentence of imprisonment stemming from a felony conviction.

Thereafter, while acknowledging to the court that he had discussed with counsel his right to

present evidence in mitigation, he advised the court it was his desire to waive his right to

present any mitigating evidence.[1]  After finding each of Petitioner's actions (plea of guilty,

plea of guilty to all four aggravating factors, and waiver of right to present evidence in

mitigation) were knowingly, voluntarily and intelligently made, the district court sentenced

---

[1] During the course of these proceedings, Petitioner asked the sentencing court to impose the death penalty.

Petitioner to death. *See*, Transcript of Post-Competency Evaluation Hearing, District Court Arraignment, Plea and Sentencing held on October 28, 2002.

Petitioner waived direct review of his conviction and sentence. On April 23, 2004, after conducting its mandatory sentence review, the Oklahoma Court of Criminal Appeals affirmed Petitioner's sentence. *Duty v. State*, 89 P.3d 1158 (Okla. Crim. App. 2004).

On August 27, 2004, Petitioner filed an Application for Post-Conviction Relief in the Oklahoma Court of Criminal Appeals. His application alleged two grounds for relief: (1) ineffective assistance of counsel in failing to present mitigation evidence; and (2) the aggravating circumstance "that the defendant was previously convicted of a felony involving the use or threat of violence" and "the murder was committed by the defendant who was serving a sentence of imprisonment on conviction of a felony" were duplicative. On October 11, 2004, the Oklahoma Court of Criminal Appeals, in an unpublished opinion, denied relief. Petitioner now seeks relief from his death sentence pursuant to 28 U.S.C. § 2254.

As a preliminary matter the Court notes that Marty Sirmons is currently the Warden at Oklahoma State Penitentiary. The Court finds, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Marty Sirmons is the proper substituted Respondent and the Court Clerk shall be directed to note such substitution on the record.

## I. RECORDS REVIEWED

This Court has reviewed: (1) the Petition for Writ of Habeas Corpus filed on July 28, 2005; (2) the Response to the Petition filed by the State of Oklahoma on September 7, 2005; (3) the Reply to the Response filed by Petitioner on September 27, 2005; (4) the transcript

of the Preliminary Hearing held on July 24, 2002; (5) the transcript of proceedings held on

August 12, 2002; (6) the transcript of Post-Competency Evaluation Hearing, District Court

Arraignment, Plea and Sentencing held on October 28, 2002, hereinafter referred to as Tr.

Of Oct. 28, 2002; (7) the original record from Pittsburg County District Court, Case No. F-

02-243; and (8) the Oklahoma Court of Criminal Appeal records in Case Nos. D-2002-1367

and PCD-2003-823 which were transmitted to this Court. Although not listed specifically,

this court has thoroughly reviewed all other items filed in this case. See Inventory of State

Court Record, Docket No. 25, filed on April 19, 2005.

As a result, this Court finds that the records, pleadings and transcripts of the state

proceedings provide all the factual and legal authority necessary to resolve the matters in the

petition and, therefore, an evidentiary hearing is unnecessary. *Keeney v. Tamayo-Reyes*, 504

U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct.

764, 66 L.Ed.2d 722 (1981)(*Sumner I*); *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71

L.Ed.2d 480 (1982)(*Sumner II*).

## II. STATEMENT OF THE FACTS

Historical facts found by the state court are presumed correct, unless the petitioner

rebuts the same by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Since Petitioner

has failed to rebut the facts, as set forth by the Oklahoma Court of Criminal Appeals, this

Court hereby adopts the factual findings made by the Oklahoma appellate court.

> On December 19, 2001, Duty talked his cellmate, Curtis Wise, into
> acting as a hostage so Duty could be moved from the Disciplinary Unit to
> Administrative Segregation. According to Duty, Wise allowed Duty to tie his

hands behind his back. But, after doing so, Duty strangled him to death. Duty stated that Wise struggled for his life and it took a while.

*Duty v. State*, 89 P.3d 1158, 1161 (Okla. Crim. App. 2004). Additional facts will be discussed as they become relevant.

### III. PETITIONER'S CLAIMS FOR RELIEF

In his Petition (Doc. 32) filed on July 28, 2005, Petitioner raises six (6) grounds for relief. Respondent filed a Response to the Petition (Doc. 33) by and through the Attorney General of the State of Oklahoma on September 7, 2005. Petitioner filed a Reply (Doc. 34) on September 27, 2005. Specifically, Petitioner asserts the following errors entitle him to release from custody: (1) ineffective assistance of counsel; (2) duplicative aggravating circumstances violated Petitioner's Eighth Amendment rights; (3) there was insufficient evidence to support the continuing threat aggravating circumstance and this aggravator is unconstitutional; (4) the heinous, atrocious, or cruel aggravating circumstance is unconstitutionally vague and the evidence was insufficient to support this aggravator; (5) Petitioner's prior felony convictions were too remote in time to be considered by the Court and were duplicative of the continuing threat aggravator; and (6) Oklahoma's lethal injection protocols violate the Eighth, Fifth and Fourteenth Amendments; or alternatively, any execution method employed would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

# IV.  STANDARD OF REVIEW

Since Petitioner filed his petition in July, 2005, this case is governed by the statute as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  See *Lindh v. Murphy,* 521 U.S. 320, 326-327, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

The AEDPA made significant changes to federal habeas corpus law, specifically delineating the circumstances under which a federal court may grant habeas relief.  Under the AEDPA's provisions, this Court is precluded from granting habeas relief on any claim adjudicated on the merits by a state court

> unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Furthermore, determinations of factual issues made by state courts are presumed correct and a habeas petitioner must rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 592 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court interpreted the above-quoted statute holding, in order for a petitioner to obtain federal habeas relief, the petitioner must first demonstrate that his case satisfies the conditions set by § 2254(d)(1).  A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court case law or "if the state confronts a set of facts that are materially

indistinguishable from" a decision of the Supreme Court, but nonetheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002), citing *Williams v. Taylor*, 529 U.S. at 405-406. Whereas, the "unreasonable application" provision is implicated when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. at 407. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, — U.S. —, 127 S.Ct.1933, 167 L.Ed.2d 836 (2007). Finally, the Supreme Court has made it clear that a state court is not required to cite Supreme Court caselaw, or even be aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8.

## V. PETITIONER'S ALLEGED ERRORS

### 1. Ineffective assistance of counsel

Petitioner first claims his counsel provided ineffective assistance of counsel by failing to investigate and present compelling mitigating evidence to the sentencer. Petitioner raised this claim in his state court application for post-conviction relief arguing counsel was ineffective for failing to obtain further psychological testing and providing additional information regarding his childhood and life history to the sentencing court. The Oklahoma

Court of Criminal Appeals denied relief holding counsel's conduct was not deficient. *Duty v. State*, Order Denying Original Application for Post-Conviction Relief, Case No. PCD-3003-823 (Okla. Crim. App. Oct. 11, 2004), at p. 6. Additionally, the Oklahoma court found, even if counsel had been aware of the information contained in the new psychological report, Petitioner had failed to establish prejudice. *Id*. at pp. 7-9. Respondent asserts nothing presented by Petitioner establishes that the Oklahoma Court of Criminal Appeals decision on this issue was either contrary to or an unreasonable application of federal law.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the legal standards which apply to claims of ineffective assistance of counsel in a criminal proceeding. First, the Court indicated that the defendant must establish that the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. In order to establish that counsel's performance was deficient, Petitioner must establish counsel made errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Second, the defendant must establish that the deficient performance prejudiced the defense. *Id*. Failure to establish either prong of the *Strickland* standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.* at 696.

While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in *Strickland*,

Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689. (citations omitted).

In deciding whether counsel was ineffective, a court must judge the reasonableness of the challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A defendant attacking an attorney's assistance must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment and then the court must determine, in light of all of the circumstances, whether the identified acts were outside the wide range of professionally competent assistance.  *Id.* at 690.  Courts are free to address the performance and prejudice components in any order and need not address both where a defendant fails to make a sufficient showing of one.  *Id.* at 697.

While the failure to present available mitigating evidence is not *per se* ineffective assistance of counsel, reviewing courts must evaluate the reasons for counsel's failure to present mitigating evidence and then decide whether the failure, if due to an attorney's

deficient performance, prejudiced the defendant. *Hale v. Gibson*, 227 F.3d 1298, 1314 (10th Cir. 2000) (quoting *Breechen v. Reynolds*, 41 F.3d 1343, 1365-1368 (10th Cir. 1994)). One of counsel's basic obligations is to make the adversarial testing process work. Since this testing process generally cannot function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, the Supreme Court has indicated a defense attorney "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. *See also, Stouffer v. Reynolds*, 168 F.3d 1155, 1167 (10th Cir. 1999). A reasonable investigation includes an investigation of the defendant's background for possible mitigating evidence. *Breechen*, 141 F.3d at 1366. In a capital case, this duty is strictly observed. *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997). Where, however, a defendant instructs his attorney not to present any mitigating evidence, counsel's failure to investigate further will not be considered prejudicial under *Strickland. Schriro v. Landrigan*, — U.S. —, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

In deciding whether Petitioner's trial counsel rendered effective assistance with respect to the second stage of the proceedings, the Oklahoma Court of Criminal Appeals correctly applied Supreme Court precedent to the facts of this case, focusing first on whether counsel's conduct fell below an objective standard of reasonableness. The court held:

> In regards to the *Strickland* standard, we find that counsel's conduct was not deficient. Counsel requested that Duty be examined by a state psychologist who was familiar with examining those seeking to plead guilty in capital cases. This examination provided the framework for determining whether Duty was competent to enter a guilty plea and waive certain rights

regarding the presentation of mitigating evidence and the right to appeal from the conviction. Further investigation into Duty's mental health was not required. These reports indicated that Duty knew what he was doing and that he had the mental capacity to understand the ramifications of his guilty plea and his request to be sentenced to death. The report also indicated that Duty has never suffered from a mental disorder.

Furthermore, Duty requested that no mitigating evidence be presented on his behalf. In complying with Duty's request and by requesting such evaluations that were necessary to determine that Duty knew the consequences of his guilty plea, we find that counsel's conduct did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Moreover, counsel's failure to have Duty evaluated further was not a failure to reasonably investigate Duty's mental health. See *Wiggins v. Smith*, 539 U.S. at ___, 123 S.Ct. at 2535. Counsel's reasoned professional judgment supported his decision.

*Duty v. State*, Order Denying Original Application for Post-Conviction Relief, Case No. PCD-3003-823 (Okla. Crim. App. Oct. 11, 2004), at pp. 6-7 (footnote omitted). Thereafter, the state court found that counsel's failure to have a more thorough mental health examination prior to sentencing did not prejudice Petitioner because

. . . . His entire plan was to kill someone and ask that the State kill him as punishment. In fact, Duty chose to stipulate to the aggravating circumstances set forth in the bill of particulars, against his attorney's advise. Duty stated that he would kill again if he did not receive the death penalty. While this sort of behavior might not seem rational or mentally sound, for someone in Duty's position (having been incarcerated for numerous years and facing the possibility of continuous incarceration until death), his decision was his way of taking the easy way out, short of suicide, which he had decided was immoral. Duty determined that death was a better option than being locked up for the rest of his life.

*Id.* at p. 8.

The record below unequivocally establishes Petitioner advised the sentencing court, against his attorney's advice, he did not want to present any mitigating evidence in this case.

Specifically, on October 28, 2002, after hearing testimony regarding Petitioner's competency, the Court had the following discussion with Petitioner:

> THE COURT: Mr. Duty, I have a couple of questions that I want to ask you, and they are -- your answers are very important to me.
>
> I am not asking these -- I want you to understand -- I want you to understand that I am not asking these questions just for the record. I mean I am not just asking these questions because somebody needs to ask them, and that happens a lot in the courtroom, you understand.
>
> THE DEFENDANT: Yes.
>
> THE COURT: A lot of times questions are asked because the record needs to show a question was asked and an answer was given, and the answer is what the record is looking for.
>
> I am not asking you these questions for the record, I am not asking you these questions for any purpose other than I need to know your answers here. And I need to know some reasons that you might have, because you are, in effect, placing some very important decisions with this Court.
>
> And the decision that I must make in your case, I want it to be a decision that is based on the law, and I want it to be a correct decision.
>
> Now, you have indicated to me through your lawyer at the earlier hearing that you are wanting to plead guilty to first degree murder.
>
> THE DEFENDANT: Right.
>
> THE COURT: And that your position is upon a plea of guilty, your position is going to be that you would further enter a plea of guilty and agree with the Bill of Particulars that has been filed by the State, and that you position is going to be that you are asking the Court to impose the death penalty.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, is that still your position today?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: The three doctors have given me their opinion that you are competent to understand what you are doing, competent to appreciate and understand the consequences of what you are doing.

I want to know from you what -- and you don't -- you can answer this question as long or short an answer as you wish. Why are you asking -- well, first of all, I would -- you are asking to plead guilty or you are intending to plead guilty to first degree murder, I presume because you believe you are guilty of that crime.

THE DEFENDANT: Yes, sir.

THE COURT: And that if you do plead guilty, that you understand that the reason for pleading guilty will be -- and I will inquire of you further about this -- that you are, in fact, guilty.

THE DEFENDANT: Yes.

THE COURT: Now, more importantly for these purposes today, why are you intending to ask this Court to impose the death penalty?

THE DEFENDANT: Well --

THE COURT: And I presume that you have thought about this --

THE DEFENDANT: Yeah.

THE COURT: -- and have a reason. And I'd like to know what it is.

THE DEFENDANT: Well, number one, I know I am never getting out of prison; I am going to spend the rest of my life there. And I think this is -- you know -- the best thing for me.
  Because I feel that if I stay in prison, I am just going to continue doing the same things I have done in the past. There's not going to be any -- you know -- if I get angry at someone, I'm going to do something.
  And I'd just as soon go ahead and -- I don't want to do that anymore. And I know I will if I --

THE COURT: Now, when you say if you get angry at someone you are going to do something, are you talking about - -

THE DEFENDANT: The same thing I've done.

THE COURT: -- killing somebody?

THE DEFENDANT:  Right.

THE COURT:  And you are concerned about that?

THE DEFENDANT:  Right.

THE COURT:  And you don't want to do it again?

THE DEFENDANT:  Right.

THE COURT:  And so that's the reason you want to, in effect --

THE DEFENDANT:  That and the fact that I just don't want to spend the rest of my life in prison.

THE COURT:  Okay.  And you've thought about this a lot?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is there anything else you want to tell me?  Because I am the one that's going to be left with this decision.  Is there anything else you want to tell me?

THE DEFENDANT:  No, just that I'd like for you to go by my wishes, and this is what I want, and I feel I deserve this.  And if I went to a jury trial, I'd probably get the same thing, so . . . .

Tr. of Oct. 28, 2002, at pp. 10-14.

Following this colloquy, the court found the defendant competent to understand the nature of the charges against him and to consult with and assist his attorney.  Petitioner was then allowed to enter a plea of guilty to the first degree murder of Curtis Wise.  Following entry of his guilty plea, counsel advised the court that petitioner intended to plead guilty to the Bill of Particulars.  Before allowing petitioner to do so, the court had the following discussion with petitioner:

13

THE COURT: Okay. Mr. Duty, I'm now going to discuss with you the Bill of Particulars which has been filed in this case. And first, let me ask you, have you reviewed this? It's a two-page document.

THE DEFENDANT: Yes, I have.

THE COURT: Have you reviewed this with your lawyer?

THE DEFENDANT: Yes.

THE COURT: And have you also reviewed the Notice of Evidence of Aggravating Circumstances?

THE DEFENDANT: Yes.

THE COURT: The witnesses they intended to call if this went to trial?

THE DEFENDANT: Yes.

THE COURT: Now, you understand, I've found you guilty of first degree murder, but you have a right, prior to sentencing after being found guilty of first degree murder when a Bill of Particulars is filed, you have a right to a sentencing hearing.

THE DEFENDANT: Yes, sir.

THE COURT: And it would be, in effect, a separate trial where the State would be saddled with the burden of proving this Bill of Particulars beyond a reasonable doubt by evidence, and then a judge or a jury would also be -- after the State has put on its case as to the Bill of Particulars to a judge or jury, you would have the right to present mitigating evidence.

You would have the right to call witnesses to present what's called mitigation to attempt to convince the judge or jury that the death penalty was not the appropriate sentence, and that the sentence should be something other than the death penalty.

And it's called mitigating evidence, but it's a time -- it's a time for you to call witnesses to attempt to mitigate the sentence or to cause the person or the jury who is doing the sentencing to give consideration to other sentences other than the death penalty. You understand you have that right?

THE DEFENDANT: Yes.

THE COURT:  Now, have you discussed all of this with your lawyer?

THE DEFENDANT:  Yes.

THE COURT: And do you fully understand your rights on what would be called a second-stage sentencing hearing?

THE DEFENDANT:  Yes.

THE COURT: You understand the State has the burden of proof to prove the Bill of Particulars beyond a reasonable doubt to the judge or a jury?

THE DEFENDANT:  Yes.

THE COURT:  And you understand you would have the right to present evidence in mitigation?

THE DEFENDANT:  Yes.

THE COURT:  Or evidence that would tend to lessen the sentence.

THE DEFENDANT: Yes.

THE COURT:  Or to move the sentencing authority away from the death penalty.

THE DEFENDANT:  Yes.

THE COURT:  Now, is it your intention, as you've indicated in the Summary of Facts form, is it your intention to enter a plea of guilty to the Bill of Particulars?

THE DEFENDANT:  Yes.

THE COURT:  And are you intending to present any evidence in mitigation?

THE DEFENDANT:  No.

THE COURT:  And do you specifically waive or give up your right to present evidence in mitigation?

THE DEFENDANT:  Yes.

THE COURT:  And you've fully discussed this with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  And don't want to call any witnesses to attempt to mitigate or lessen the sentence?

THE DEFENDANT:  No.

*Id.* at pp. 38-40.

Thereafter, the court allowed the petitioner to enter a plea of guilty to the Bill of Particulars, including admission of facts sufficient to support each of the four aggravating factors alleged therein.  *Id.* at pp. 41-45.   Before accepting petitioner's plea to the Bill of Particulars, however, the judge again discussed petitioner's waiver of his right to present mitigating evidence.  The record indicates the following discussion was held:

THE COURT: . . . Now, Mr. Duty, again, I want to inquire of you that you specifically waive or give up any right you may have to present mitigating evidence.

THE DEFENDANT:  Yes.

THE COURT:  Is that correct?  You don't want me to consider any evidence from you on sentencing other than the statements that you've made?

THE DEFENDANT:  No.

*Id.* at pp. 45-46.

After finding petitioner guilty of both the First Amended Information and the Bill of Particulars, the court continued to question petitioner's decision to waive his right to present mitigating evidence, asking:

16

THE COURT: . . . And as I indicated, he has knowingly and voluntarily waived his right to present mitigation.

Mr. Bowen, you've discussed that with him and explained to him his right to present evidence in mitigation?

MR. BOWEN: Yes, Your Honor. Yes, I have. We have explained, we have talked about it at length, the second stage of trial and what that is, what mitigation is.

As a matter of fact, in spite of what Mr. Duty had indicated was his desire, we have still investigated the case with regard to his background in preparation for mitigation, should Mr. Duty change his mind.

And so we do have evidence which I have talked to Mr. Duty about that we could present; however, again against counsel's advise, it is his desire to waive that right to mitigation.

THE COURT: All right. Mr. Duty, you understand that Mr. Bowen and the Indigent Defense System has worked on getting evidence in mitigation?

THE DEFENDANT: Yes.

THE COURT: And you have instructed them not to present it? You've instructed them not to call any witnesses in mitigation?

THE DEFENDANT: Right.

THE COURT: Is that correct?

THE DEFENDANT: That's right.

*Id.* at pp. 48-49.

Following this colloquy, the state presented some evidence on the issue of sentencing. Thereafter, the court made additional inquiries of petitioner regarding mitigating evidence asking:

THE COURT: And Mr. Duty, you continue - - at this point, I want to just ask you one last time, the decisions that you have made here today and your pleas of guilty and your pleas of guilty to the Amended Information, your plea of guilty to the Bill of Particulars, and your statement as to what you feel is the

appropriate sentence, has your position changed any since we started this hearing?

THE DEFENDANT: No.

THE COURT: And you continue to instruct your attorney or you do not wish to call any evidence in mitigation?

THE DEFENDANT: No.

*Id.* at pp. 57-58.

Based upon the entire colloquy with petitioner and in light of *Schriro*, this Court finds Petitioner has failed to establish prejudice under *Strickland* and, therefore, his claim of ineffective assistance of counsel has no merit.

## 2. Duplicative aggravating circumstances

In his second ground for relief, Petitioner asserts two of the four aggravating circumstances alleged and stipulated to in this case were duplicative. Specifically, Petitioner claims the evidence required to prove 1) that he had previously been convicted of a felony involving the use or threat of violence and 2) that he was in prison at the time he murdered Curtis Wise, was the same evidence. Petitioner first raised this claim in his state post-conviction proceedings. Although finding the claim was procedurally barred due to Petitioner's failure to raise it on direct appeal, the Oklahoma Court of Criminal Appeals addressed the issue on its merits, holding:

> The two aggravating circumstances: "the defendant was previously convicted of a felony involving the use or threat of violence to the person" and "the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony" are not dependent on the existence of each other.
>
> Duty was serving life sentences for several different felonies arising from the District Courts of Tillman and Jackson counties in Oklahoma. Any one of these sentences could have served as a basis for the "while imprisoned" aggravating circumstances.
>
> Duty's prior convictions consisted of shooting with intent to kill, first-degree rape, robbery with firearms, and kidnapping. Duty stipulated that each of these convictions involved the "use or threat of violence to the person."
>
> The evidence is used to support two different conclusions. Status as a prisoner while committing the murder and past behavior. Therefore, the two aggravating circumstances are not duplicative.

*Duty v. State*, Order Denying Original Application for Post-Conviction Relief, Case No. PCD-2003-823 (Okla. Crim. App. Oct. 11, 2004), at pp. 10-11 (citations omitted).

In *United States v. McCullah*, 76 F.3d 1087, 1111-1112 (10th Cir. 1996), the Tenth Circuit held in a weighing system, like Oklahoma, submission of duplicative aggravating

factors is constitutional error.  *See also*, *Davis v. Executive Director of Department of Corrections*, 100 F.3d 750 (10th Cir. 1996).  "To determine whether aggravating factors are duplicative "[t]he applicable test 'is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance necessarily subsumes the other[s].'" *Smith v. Gibson*, 197 F.3d 454, 464 (10th Cir. 1999) (quoting *Cooks v. Ward*, 165 F.3d 1283, 1289 (10th Cir. 1998))."  Further, while a jury may rely on some of the same evidence in finding two aggravating circumstances, the factors will not be considered duplicative if the jury does not have to find one in order to find the other.  *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999).

Petitioner argues the finding of the "while serving a sentence of imprisonment" aggravator relies on the finding of the "prior conviction of a violent felony" aggravator. Clearly, the sentencing authority did not have to find Petitioner had been previously convicted of a violent felony to find he was serving a sentence of imprisonment when he committed the murder of Curtis Wise.  Rather, it was only necessary to show he was actually serving a prison sentence at the time of the murder.  Similarly, in order to find Petitioner had previously been convicted of a violent felony, the court was not required to find Petitioner was serving a sentence of imprisonment.  Even though the evidence may have been the same, it was used to support two different findings and neither of those findings "necessarily subsumes" the others.  *Fields v. Gibson*, 277 F.3d 1203, 1219 (10th Cir. 2002).  Accordingly, this Court finds the two aggravating factors are not duplicative.  Furthermore, Petitioner has totally failed to establish that the Oklahoma Court of Criminal Appeals adjudication of this

claim is contrary to Supreme Court precedent or is based on an unreasonable determination of the facts. Therefore, pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to relief.

### 3. "Continuing Threat" Aggravator[2]

a. Sufficiency of the Evidence

In the heading of his third proposition of error and in the last paragraph of this proposition, Petitioner appears to be arguing that the evidence was insufficient to support the "continuing threat" aggravator. Simply because "[t]he Oklahoma Department of Corrections currently single cells" petitioner, he claims this is sufficient to decrease any threat he may present to any prison society. *See*, Pet. at p. 17. In conducting its mandatory sentence review, the Oklahoma Court of Criminal Appeals specifically addressed the sufficiency of the evidence finding:

> To support the continuing threat aggravating circumstance, "the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that [the] threat would continue to exist in the future."
> Duty killed his prison cellmate. During the plea hearing, Duty was adamant about the fact that he would kill again. He stated that he would kill a prison guard or another inmate if things did not go his way. The evidence supported this aggravating circumstance. Basically, Duty admitted that he would kill in order to get his way, thus he is a continuing threat to society.

*Duty v. State*, 89 P.3d 1158, 1161 (Okla. Crim. App. 2004).

In *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the Court held, in

---

[2]Oklahoma's "continuing threat" aggravating factor authorizes the imposition of the death penalty if the sentencer finds there to be "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S. § 701.12(7).

a federal habeas proceeding challenging the sufficiency of the evidence in a state trial, a reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Further, the Court indicated following conviction, a judicial review of the "evidence is to be considered in the light most favorable to the prosecution." *Id.*

Determinations of factual issues by a state court are presumed correct. 28 U.S.C. § 2254(e)(1). "A state court's finding of an aggravating circumstance in a particular case. . . is arbitrary or capricious if and only if no reasonable sentencer could have so concluded." *Lewis v. Jeffers*, 497 U.S. 764, 783, 110 S.Ct. 3092, 3103, 111 L.Ed.2d 606 (1990).

A review of the record herein convinces this Court the decision of the state court was not contrary to clearly established Supreme Court precedent. Furthermore, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief.

b.  Constitutionality of "Continuing threat" Aggravator

In his third proposition, despite the heading of the proposition, Petitioner attacks the constitutionality of the "continuing threat" aggravating circumstance arguing Oklahoma's continuing threat aggravator is so vague and overbroad that it is unconstitutional.   Despite Appellant counsel's filing of a brief in the mandatory sentence review proceeding before the Oklahoma Court of Criminal Appeals in which counsel argued the constitutionality of the "continuing threat" aggravating circumstance, the court refused to consider the issue finding it was "not a part of the mandatory sentence review; therefore, Duty has waived review of this issue." *Duty v. State*, 89 P.3d at p. 1161.  Since the Tenth Circuit has held Oklahoma's post-conviction statute[3] which bars review of claims that could have been raised on direct appeal including issues involving fundamental, constitutional rights, is an "adequate, as well as independent, state ground" which can effectively bar federal habeas review,[4] Respondent urges this Court to refuse to consider this issue.

Despite any procedural bar to review of this claim, the Tenth Circuit has consistently held the continuing threat factor used in the Oklahoma's statutory sentencing scheme is constitutional.  *Nguyen v. Reynolds*, 131 F.3d 1340, 1352-54 (10th Cir.1997), cert. denied, 525 U.S. 852, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998).  See also,  *Ross v. Ward*, 165 F.3d 793, 800 (10th Cir.1999) (citing *Castro v. Ward*, 138 F.3d 810, 816 (10th Cir.), *cert. denied*,

[3]*See*, 22 O.S. Supp. 1995, § 1089.

[4]*Steele v. Young*, 11 F.3d 1518, 1521 (1993).

23

525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998) and Nguyen) and *Fowler v. Ward*, 200 F.3d 1302, 1313 (10th Cir. 2000). Accordingly, this claim for relief is denied.

## 4. Heinous, Atrocious, or Cruel Aggravating Circumstance

### a. Sufficiency of the Evidence

In his fourth ground for relief, Petitioner asserts the evidence was insufficient to establish that the victim's death was "especially heinous, atrocious or cruel." Specifically, Petitioner asserts there was no evidence regarding 1) whether the death of Curtis Wise involved pain and suffering or 2) whether the victim was conscious or had been tortured. This claim was addressed by the Oklahoma Court of Criminal Appeals during its mandatory sentence review as follows:

> The especially heinous, atrocious or cruel aggravating circumstances applies to those murders that are preceded by torture or serious physical abuse. . . . Evidence supporting this aggravating circumstance consisted of Duty's own statements that Curtis struggled for his life and it took a while for him to become incapacitated. This is sufficient.

*Duty v. State*, 89 P.3d at 1161 (citation omitted).

Under Oklahoma law, before a jury can find that a murder was especially heinous, atrocious or cruel there must be proof that death was preceded by torture or serious physical abuse. *Turrentine v. State*, 965 P.2d 955, 976 (Okla. Crim. App. 1998). *See also*, OKLA. STAT. tit. 21, § 701.12(4) (1999). Two kinds of cases have been identified by the Oklahoma Court of Criminal Appeals in which "torture or serious physical abuse" will be found: "those characterized by the infliction of "great physical anguish" and those characterized by the infliction of "extreme mental cruelty." *Thomas v. Gibson*, 218 F.3d 1213, 1226 (10th Cir.

2000) (citing *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995)). In *Spears v. State*, 900 P.2d 431, 443 (Okla. Crim. App. 1995), the court held "[t]o support a finding of serious physical abuse, the State must show the victim endured *conscious* physical suffering prior to death." (emphasis in original) *See also*, *Cheney v. State*, 909 P.2d 74, 81 (Okla. Crim. App. 1995) (Footnote 20 contains a summary of Oklahoma cases requiring conscious suffering to support evidence of heinous, atrocious or cruel aggravating circumstance).

Again, after viewing the evidence in the light most favorable to the prosecution, this Court finds the decision of the Oklahoma court is not an unreasonable determination of the facts in light of the evidence presented. In addition to the factual findings of the Oklahoma court quoted above, the record is replete with evidence supporting a finding that this murder was "especially heinous, atrocious or cruel." Specifically, the evidence includes a letter Petitioner wrote to the victim's mother shortly after strangling the victim in which Petitioner states he told the victim he "wanted to use him as a hostage" and then he "tied him up hands and feet, then I strangled him. It's not like the movies, it took awhile." State's Exhibit 1 to Tr. of Oct. 28, 2002. Furthermore, Petitioner admitted during his plea the victim's death involved pain and suffering; the victim was conscious during the attack; and the attack involved "torture" to the victim. *See*, Tr. of Oct. 28, 2002 at p. 43. To the extent Petitioner admitted the victim was conscious and suffered physical pain which lasted for some extended period of time, this Court finds the evidence supported both a finding that great physical as well as extreme mental anguish would have been involved in this murder. The fear the victim must have endured when he realized he had just allowed Petitioner to tie him up not

as a "hostage" but in order to kill him must have been horrific. Additionally, Petitioner was clearly conscious during a substantial portion of this crime or he would not have been able to struggle for his life. Accordingly, the evidence was more than sufficient to support this aggravating circumstance. Therefore, this claim is denied.

b.  Constitutionality of "heinous, atrocious or cruel" aggravator

Petitioner further argues this aggravating circumstance is unconstitutionally vague. The Oklahoma Court of Criminal Appeals rejected this claim. *Duty v. State*, 89 P.3d at 1161. Respondent urges this Court to find the Oklahoma court's decision complies with clearly established federal law.

In *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005), the United States Supreme held where a state's highest court has construed an aggravating circumstance narrowly and has followed that precedent numerous times; absent an affirmative indication otherwise, a reviewing court must presume it did the same thing in the case before it. In this particular case, the factual findings of the state court leaves no doubt the state court followed its earlier precedent. Furthermore, the Tenth Circuit Court of Appeals has consistently upheld the constitutionality of the current definition of Oklahoma's heinous, atrocious or cruel aggravating circumstance. *Miller v. Mullin*, 354 F.3d 1288, 1300 (10th Cir. 2004) and cases cited therein. Accordingly, this Court finds this claim lacks merit and Petitioner is, therefore, not entitled to relief thereon.

**5.  Use of old convictions to support continuing threat aggravating circumstance is unconstitutional**

Petitioner argues in his fifth proposition the use of a conviction more than twenty years old to support a sentence of death is unconstitutional. The Oklahoma Court of Criminal Appeals rejected this argument. *Duty v. State*, 89 P.3d at 1161-62. Petitioner claims the Oklahoma Court's decision is contrary to federal law as determined by the United States Supreme Court. To support this argument, Petitioner says,

> In *Gardner v. Florida*, 430 U.S. 349, 358 (1977), the Supreme Court passed on the constitutionality of a 'capital-sentencing procedure which permits a trial judge to impose the death sentence on the basis of confidential information which is not disclosed to the defendant or his counsel.' The Supreme Court found the interest in reliability in sentencing outweighed the proffered justifications for the procedure. As the Court noted, 'consideration must be given to the quality, as well as the quantity, of the information' on which the sentencer relies.

Pet. at p. 18. Petitioner then admits the problem in *Gardner* was the use of confidential information contained within a presentence report which the defendant had no way to challenge since neither the defendant nor his counsel were advised of the information or given an opportunity to challenge the same. Petitioner asserts the use of his twenty-year old convictions, where the evidence of the underlying crime and the witnesses thereto are unavailable, presents the same due process concerns as those presented where the information used by the sentencer is not disclosed to the defendant. Finally, Petitioner again states the use of the prior convictions was duplicative with the "serving a term of imprisonment" aggravating circumstance[5] thereby denying him a "fair proceeding."

---

[5]In the heading to this proposition, Petitioner states the use of the prior violent felony aggravator was duplicative of the "continuing threat" aggravator. This particular argument was never raised before the Oklahoma court system and, therefore, this Court has not addressed this claim.

Respondent asserts Petitioner has failed to present controlling authority for his claims, and urges this Court to deny relief.

The Oklahoma Court of Criminal Appeals rejected both of these arguments. Specifically, the Oklahoma court noted they had previously allowed convictions which were nearly forty years old to be used in support of the "prior violent felony convictions" aggravating circumstance. *Duty v. State*, 89 P.3d at 1162. Additionally, as discussed in paragraph V.2 *supra*, the Oklahoma court indicated, even though the evidence used to support the "prior violent felony" aggravator and the "serving a term of imprisonment on conviction of a felony" aggravating factor may have been the same, these aggravators were not duplicative. *Duty v. State*, Order Denying Original Application for Post-Conviction Relief, Case No. PCD-2003-823, at pp. 10-11.

Despite the holding in *Gardner*, which does not address Petitioner's claims, this Court fails to see how evidence or the witnesses availability to testify regarding the underlying facts of Petitioner's prior violent felony convictions would have added anything to Petitioner's sentencing hearing. This is particularly true where, as here, Petitioner personally admitted he had been convicted of the prior felonies alleged in the Bill of Particulars, and that he had "been previously convicted of a felony involving the use or threat of violence to a person." Tr. of October 28, 2002, at pp. 41-42. Therefore, this Court finds, pursuant to 28 U.S.C. § 2254(d), Petitioner has failed to establish either 1) the decision of the Oklahoma Court of Criminal Appeals was contrary to, or involved an unreasonable application of, clearly established federal law, or 2) the decision was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding. Accordingly, this claim is denied.

## 6. Lethal injection

In his sixth and final proposition of error, Petitioner argues Oklahoma's policies and protocols regarding lethal injection violate the Eighth and Fourteenth Amendments.[6] Respondent argues Petitioner has failed to exhaust this claim in the Oklahoma Court system and, therefore, said claim is procedurally barred.

As a general rule, if a petitioner has failed to present a claim to the state courts in the manner prescribed by the procedural rules of the state, the state court may deem the claim defaulted. *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Where a state prisoner defaults his federal claims in state court based upon an independent and adequate state procedural rule, federal review of his habeas claims will be barred. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). If the state court's finding is separate and distinct from federal law, it will be considered "independent." *See Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Duvall v. Reynolds*, 139 F.3d 768 (10th Cir. 1998), *cert. denied,* 525 U.S. 933, 119 S.Ct. 345, 142 L.Ed.2d 284 (1998). If the finding is applied "evenhandedly to all similar claims," it will be considered "adequate." *Maes v. Thomas*, 46 F.3d 979 (10th Cir. 1995),

---

[6]In the event Oklahoma's lethal injection method were declared unconstitutional, Petitioner asserts that execution under any of the alternative statutory methods would also be cruel and unusual under the Eighth and Fourteenth Amendments. Since this Court does not believe Oklahoma's method of execution by lethal injection is unconstitutional, the constitutionality of alternative methods of execution in Oklahoma have not been considered.

*cert. denied* 514 U.S. 1115, 115 S.Ct. 1972, 131 L.Ed.2d 861 (1995) (citing *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982)).  Where the state-law default prevented the state court from reaching the merits of the federal claim, the claim ordinarily cannot be reviewed in the federal courts.  *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706  (1991).  "Review is precluded 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *See Breechen v. Reynolds*, 41 F.3d 1343, 1353 (10th Cir. 1994), *cert. denied*, 515 U.S. 1135, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995) and cases cited therein.  As noted in *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998), *cert. denied,* 525 U.S. 950, 119 S.Ct. 378, 142 L.Ed.2d 312 (1998), the procedural default rule is not a jurisdictional rule; rather, it is based upon the principles of comity and federalism.

Petitioner has not attempted to show cause or prejudice.  Rather, Petitioner claims he is simply raising the claim to ensure he is not foreclosed from bringing a § 1983 action at a later date.  Additionally, Petitioner asserts this claim bears some similarity to competency to be executed claims where action might appropriately be deferred to a subsequent proceeding.  *See*, Pet. at p. 20.  *See also*, *Steward v. Martinez-Villareal*, 523 U.S. 637, 643-44, 118 S.Ct. 1618, 1621-1622, 140 L.Ed.2d 849 (1998).  In *Hill v. McDonough*, — U.S. —, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), however, the Supreme Court held, without ruling on the constitutionality thereof, that a cruel and unusual challenge to a particular method of lethal injection was properly raised as § 1983 action.  Thus, Petitioner's concern that he will be

foreclosed from later raising this issue is unwarranted, and Petitioner is procedurally barred from raising this claim.

Even if this claim were not procedurally barred, this Court would find Petitioner's claim lacks merit. First, Petitioner alleges that lethal injection causes unnecessary pain and suffering. Second, Petitioner speculates that any number of accidents could occur with the equipment, personnel, or chemicals involved in the process which might lead to unnecessary pain and suffering. Many other forms of execution which are undoubtedly more painful or intrusive than lethal injection, however, have withstood Eighth Amendment cruel and unusual punishment challenges. *Compare Campbell v. Wood*, 18 F.3d 662, 681-683 (9th Cir. 1994), *cert. denied*, 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994) (holding hanging is not cruel and unusual simply "because there may be some pain associated with death"); *Felker v. Turpin*, 101 F.3d 95, 97 (11th Cir. 1996), *cert. denied*, 519 U.S. 989, 117 S.Ct. 450, 136 L.Ed.2d 345 (1996) (holding no merit to Petitioner's claim that death by electrocution constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments); and *Gray v. Lucas*, 710 F.2d 1048, 1061 (5th Cir. 1983), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983) (holding the pain and terror resulting from death by cyanide gas does not render such execution method unconstitutional). Petitioner does not attempt to explain how lethal injection inflicts more pain and suffering from these other constitutional forms of execution.

Furthermore, in *Hamilton v. Jones*, 472 F.3d 814 (10th Cir. 2007), *cert. denied*, — U.S. —, 127 S.Ct. 1054, 166 L.Ed.2d 783 (2007), the Tenth Circuit held Petitioner had failed to

show "a substantial likelihood of prevailing on the merits" on a similar claim that Oklahoma's lethal injection protocol violates the Eighth Amendment's cruel and unusual punishment prohibition. Accordingly, this Court finds Petitioner's claim lacks merit.

## VI. CONCLUSION

For the reasons stated herein, Petitioner's Petition for Writ of Habeas Corpus (Docket No. 32) and his request for evidentiary hearing contained therein are hereby denied.

IT IS SO ORDERED on this 17th day of August, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma